Matter of C.A. (2006 NY Slip Op 50263(U))

[*1]

Matter of C.A.

2006 NY Slip Op 50263(U) [11 Misc 3d 1057(A)]

Decided on February 10, 2006

Family Court, Nassau County

Marks, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 10, 2006

Family Court, Nassau County
In the Matter of C.A., a Person Alleged to be a Juvenile Delinquent, Respondent.
In the Matter of K.O., (dob xx/xx/xx) A Person Alleged to be a Juvenile Delinquent, Respondent.
D-xxxxx-05

John G. Marks, J.
Respondent, C.A., under Docket No. D-xxxxx-05, and respondent, K.O., under Docket No. D-xxxxx-05, are each charged with conduct which, if committed by a person sixteen (16) years of age or older, would constitute the crimes of Harassment in the 1st Degree, in violation of Penal Law (hereinafter PL) 240.25, a Class B misdemeanor, two (2) counts and in connection with that statute Hate Crimes, in violation of PL 485.05(1)(a); (1)(b) and (1)(c) which elevates that crime to a Class A misdemeanor and Aggravated Harassment, 2nd Degree, in violation of PL 240.30(3), a Class A misdemeanor, two (2) counts.
It is alleged that on xxxxx xx, 2005, at various times in the afternoon, in xxxxxx, County of Nassau, State of New York, each respondent, acting in concert with the other:
(a) intentionally and repeatedly harassed another person by following such person in or about a public place or places or by engaging in a course of conduct or by repeatedly committing acts which places such person in reasonable fear of physical injury, to wit: respondent, at about 1:50PM on xxxxxx Road, in xxxxxx Plaza, and two others, approached A.S. and K.H., called A.S. a "dirty Jew," repeatedly questioned K.H. as to whether he was a Jew and spat on them; when A.S. and K.H. crossed the street, respondents followed them and (C.A.) grabbed K.H. by [*2]the shoulders; at about 4:30PM, on xxxxxx Road, in xxxxxx, respondent and co-respondents crossed the street to approach K.H. and A.S.; one of the respondents threw A.S. against a car, while respondent and one other surrounded K.H. and the respondent (C.A.) punched K.H. in the stomach; a co-respondent punched A.S. in the back, and
(a-i) committed a hate crime when he committed a specific offense and either: intentionally selected the person against whom the offense was committed or intended to be committed in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person regardless of whether the belief or perception is correct; or intentionally committed the act or acts constituting the offense in whole or substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person regardless of whether the belief or perception is correct, and
(b) with intent to harass, annoy, threaten or alarm another person, he strikes, shoves, kicks, or otherwise subjects another person to physical contact, or attempts or threatens to do the same because of a belief or perception regarding such person's race, color, national origin, ancestry, religion, religious practice, age, disability or sexual orientation, regardless of whether the belief or perception is correct, to wit: respondent at about 1:50PM on xxxxxx Road, in xxxxxx Plaza, and two others, approached A.S. and K.H., called A.S. a "dirty Jew," repeatedly questioned K.H. as to whether he was a Jew and spat on them; when A.S. and K.H. crossed the street, respondent (C.A.) followed them and grabbed K.H. by the shoulders; at about 4:30PM, on xxxxxx Road, in xxxxxx, respondent and his co-respondents crossed the street to approach K.H. and A.S.; one of the respondents threw A.S. against a car, while respondent and one other surrounded K.H. and the respondent (C.A.) punched K.H. in the stomach; a co-respondent punched A.S. in the back.
A Fact Finding Hearing was conducted in which testimony was taken from K.H. and A.S.
The Presentment Agency was represented by DCA Greg Roth, (hereinafter Roth). Respondent C.A. was represented by Law Guardian Anne Cheris, (hereinafter Cheris) and respondent K.O. was represented by the Law Office of Dennis Lemke, (hereinafter Lemke).
There were no exhibits received in evidence.
K.H. was the first witness called. In sum and substance, on direct, K.H. testified that his mother drove him and A.S. to the xxxxx movie theater in xxxxxx and dropped them off. They were standing by the wall of the theater when they were approached by the co-respondents, C.A. and K.O., whom they had never seen before, and were asked why are you wearing that "beanie" on your head and are you "Jewish." K.H. stated he was so afraid he would be hurt by the co-respondents if he said he was "Jewish" he responded that he was an atheist. They then called A.S. a "dirty Jew" and both co-respondents spat on them. K.H. and A.S. crossed the street. As [*3]they were crossing K.H. gave them "the finger." C.A. ran after K.H. and caught up to him in a pizzeria. C.A. held K.H. against the wall with his hands on K.H.'s shoulders and knee against him. K.H. then took it back, whereupon C.A. left, and K.H. and A.S. met two others, ate and went to the movie. When the movie was over, K.H. and A.S. and two (2) others, J. and a child he did not want to name, were walking towards Starbucks when both C.A. and K.O. ran towards them. K.O. pushed A.S. into a parked car and C.A. punched K.H. in the stomach. C.A. and K.O. then ran away. K.H. and A.S. walked to the Police Station and made a report.
K.H. was cross-examined by both Cheris and Lemke. On cross-examination, by Cheris, K.H. stated both K.O. and C.A. spat and that the spit hit him on the head. He stated that C.A. was wearing a necklace with a "C" on it and that a third person punched A.S. in the back. While this was occurring, J. ran into a store and the other child just walked away. On cross by Lemke, K.H. identified K.O. as being present and wearing a cross. He identified C.A. as coming into a pizzeria after him and restated that C.A. had punched him.
K.H. stated that he was pretty sure that it was C.A. who uttered the words, "dirty Jew," but was not one hundred percent sure.
The next witness called was A.S. In sum and substance, he testified similarly to K.H. He reiterated that he heard the slurs which made him afraid and "very insulted." He stated the C.A. and his "brother" touched his "yarmulke." He stated that they crossed the street and went into a pizzeria. He saw C.A. come into the pizzeria, grab K.H. and said some things to him. The owner told C.A. to leave. A.S. and K.H. had something to eat, met two (2) friends and all went to the movie. After the movie, the four (4) walked towards Starbucks when they saw C.A., K.O. and another, perhaps C.A.'s brother, coming across the street towards them. The four turned and walked the other way. The co-respondents caught up to K.H. and A.S. While walking towards K.H., C.A. threw A.S. against a car and they surrounded K.H. C.A. punched K.H. in the stomach. The other boy punched A.S. in the back. The co-respondents then ran away and K.H. and A.S. went to the Police Station and made a report.
On cross-examination, A.S. stated he was able to identify the respondents by looking through a yearbook. He stated that he saw both C.A. and K.H. but really didn't hear what was said.
The Court credits the testimony of both witnesses.
Under our law, a person is guilty of Harassment, 1st Degree, when (s)he intentionally and repeatedly harasses another person by following such person in or about a public place or places, or by engaging in a course of conduct, or by repeatedly committing acts which places such person in reasonable fear of physical injury.
Public Place means a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of [*4]amusement, parks, playgrounds and, hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.
Physical injury means impairment of physical conditions or substantial pain.
A person intentionally harasses another person when his/her conscious objective or purpose is to do so.
In order to find the respondent(s) guilty of this allegation, the Presentment Agency is required to prove, from all the evidence in the case, beyond a reasonable doubt, each of the following:
That on or about xxxxx xx, 2005, at about 1:50PM and at about 4:30PM, in the County of Nassau, the respondent(s) repeatedly harassed K.H. and/or A.S., by following them/him in or about a public place or places, or by engaging in a course of conduct, or by repeatedly committing acts which placed them/him in reasonable fear of physical injury, and that they/he did so intentionally.
Under our law, a person is guilty of Harassment, 1st Degree, as a Hate Crime, when that person commits Harassment, 1st Degree, and intentionally selects the person against whom the offense is committed or intended to be committed in whole or in substantial part because of a belief or a perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age of sixty years old or more, disability or sexual orientation of a person, regardless of whether the belief or perception is correct, or intentionally commits the act or acts constituting the offense in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age of sixty years old or more, disability or sexual orientation of a person, regardless of whether the belief or perception is correct.
Under our law, a person commits a Hate Crime, when he commits the offense of Harassment, 1st Degree, supra, and when:
The respondent(s) intentionally selects the person against whom the offense is committed or intended to be committed in whole or in substantial part because of a belief or perception regarding religion when the conscious objective is to do so, or commits the act or acts constituting the offense in whole or in substantial part because of a belief or perception regarding the religion when the conscious objective or purpose is to do so.
In this regard, proof of race, color, national origin, ancestry, gender, religion, religious practice, age disability or sexual orientation of the respondent(s), the victim(s) or of both the respondent(s) and the victim(s) does not, by itself, constitute legally sufficient evidence satisfying the Presentment Agency's burden of proof.
[*5]
In order to find the respondent(s) guilty of this conduct, the Presentment Agency is required to prove, from all of the evidence in this case, beyond a reasonable doubt, each of the following three elements:
(1) That on or about xxxxx xx, 2005, at about 1:50PM and at about 4:30PM, in the County of Nassau, the respondent(s), committed the offense of Harassment, 1st Degree, and
(2) That the respondent(s) selected K.H. and/or A.S., the person(s) against whom the offense was committed or intended to be committed in whole or in substantial part because of a belief or perception regarding the religion of the person(s), regardless of whether the belief or perception is correct, or That the respondent(s) committed the act or acts constituting the offense in whole or in substantial part because of a belief or perception regarding the religion of the person(s), regardless of whether the belief or perception is correct, and
(3) That the respondent(s) did so intentionally.
Under our law, a person is guilty of Aggravated Harassment, 2nd Degree, when, with intent to harass, annoy, threaten or alarm another person(s), (s)he strikes, shoves, kicks, or otherwise subjects another person(s) to physical contact, or attempts or threatens to do the same because of a belief or perception regarding such person(s) race, color, national origin, ancestry, gender, religion, religious practice, age of sixty years old or more, disability or sexual orientation, regardless of whether the belief or perception is correct.
In order to find the respondent(s) guilty of this conduct, the Presentment Agency is required to prove, from all the evidence in the case, beyond a reasonable doubt, both of the following two elements:
(1) That on or about xxxxx xx, 2005, at about 1:50PM and at about 4:30PM, the respondent(s) struck, shoved, kicked or otherwise subjected K.H. and/or A.S., to physical contact, or attempted or threatened to do so, because of a belief or perception regarding the religion of K.H. and/or A.S., regardless of whether the belief or perception was correct, and
(2) That the respondent(s) did so with the intent to harass, annoy threaten or alarm K.H. and/or A.S.
The petitions allege that the respondents acted in concert.
Our law recognizes that two or more individuals can act jointly to commit a crime, and that under certain circumstances, each can be held criminally liable for the act(s) of the other(s), or as [*6]"acting in concert."
Our law defines acting in concert as when one person engages in conduct which constitutes an offense, and when, acting with the state of mind required for the commission of that offense, (s)he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.
Under our law, for a respondent to be criminally liable for the conduct of another which constitutes an offense, it must be proven, from all the evidence in the case, beyond a reasonable doubt,
(1) That (s)he solicited, requested, commanded, importuned, or intentionally aided another to engage in that conduct, and
(2) That (s)he did so with the state of mind required for the commission of the offense.
Mere presence at the scene of a crime, even with knowledge that the crime is taking place, does not by itself make a respondent criminally liable for that crime. The Presentment Agency has the burden of proving beyond a reasonable doubt that the respondent(s) acted with the state of mind required for the commission of the crime, and either personally, or by acting in concert with the other person(s), committed each of the remaining elements of the crime.
After hearing the evidence, the Court is satisfied that the conduct alleged in the petition occurred, to wit: Both K.H. and A.S. were harassed by C.A. and K.O. and another uncharged, unknown individual. The Court is further satisfied that there was no other reason for K.H. and A.S. to have been set upon by the respondents, other than the fact that K.H. and A.S. appeared to be Jewish. Therefore, the Court is satisfied that the Present Agency has met its burden of establishing that this harassment was due to the belief or perception of the respondents that K.H. and A.S. were Jewish.
The Court must now consider the intent of the respondents upon the initiation of, and during the incident.
If it is determined that the respondents ". . . intentionally and repeatedly" harassed the victims by following them in or about a public place or places, or by engaging in a course of conduct or by repeatedly committing acts, which placed the victims ". . . in reasonable fear of physical injury," the Court must find the respondents guilty of Harassment, 1st Degree, a class A misdemeanor. If this finding is made, the Court must then go on to determine whether their conduct amounted to a Hate Crime.
On the other hand, if it is determined that the respondents engaged in the conduct with the intent to " . . . harass, annoy, threaten or alarm" the victims ". . . because of a belief or perception regarding" the victims' "religion," the Court must find the respondents guilty of Aggravated Harassment, 2nd Degree, a class A misdemeanor.
[*7]
The allegations in the instant petition occurred at approximately 1:50PM and 4:30PM on xxxxx xx, 2005.
The initial incident, initiated by the respondents was verbal. The victims walked away and "flipped the bird" at the respondents. C.A. responded by following K.H. into a pizzeria and grabbing him by the shoulders and holding him against the wall. When the owner of the pizzeria told C.A. to leave, he did. The victims then met two other friends, ate and went to the movie.
The next incident occurred after the movie. The victims were walking to Starbucks when they saw the respondents crossing the street approaching them. The victims turned to walk away when the respondents, caught up to them whereupon A.S. was thrown against a car. The group then surrounded K.H. C.A. punched K.H. in the stomach. As the respondents ran away, the unnamed, unknown boy punched A.S. in the back.
The conduct alleged in the instant petitions does not amount to a following in or about a public place.
The court must now consider whether the allegations amount to a "course of conduct." Some courts have held that the term "course of conduct" may be interpreted to mean a pattern of conduct composed of a series of the same or similar acts repeated over a period of time, however short, evidencing a continuity of purpose (see, People v. Payton, 161 Misc 2d 170, 612 N.Y.S.2d 815, and People v. Hotchkiss, 59 Misc 2d 823, 300 N.Y.S.2d 405). This court does not so find. The initial interaction between the respondents and the victims was based upon the respondents belief or perception regarding the victims' religion; however, the evidence adduced at the hearing suggests that the second incident was initiated by C.A. for having been flipped "the bird" by K.H. and whatever may have been left unsettled inside the pizzeria.
Under the circumstances of this case, the Court finds that the conduct of the respondents did not constitute "repeatedly harasses . . . by following in a public place . . .", nor establish a " . . . course of conduct. . . ", nor " . . . repeatedly committing acts . . .".
The charges of Harassment, 1st Degree, in violation of PL 240.25 are dismissed. 
Based upon the foregoing, the Court finds the Presentment Agency has met its burden as to the charge of Aggravated Harassment, 2nd Degree, as to each respondent.
Having made this determination, the Court must now decide what conduct in the petitions constitutes the two (2) counts alleged in paragraph 4(b). The Court is left to guess whether the Presentment Agency is alleging that the named respondent in each petition committed the offense of Harassment, 2nd Degree, against one of the victims at 1:50PM and 4:30PM and, if so, which victim, or against both victims at either 1:50PM or 4:30PM and, if so, at what time.
The Court finds that on xxxxx xx, 2005, at about 1:50PM, each respondent, committed an [*8]act, which if committed by a person sixteen (16) years of age or older would constitute the crime of Aggravated Harassment, 2nd Degree, in violation of PL 240.30(3).
This constitutes the Decision and Order of the Court.
ENTER
______________________________
HON. JOHN G. MARKS
Judge of the Family Court
Dated: February 10, 2006